BARRY, Judge.
The defendant was charged with armed robbery. La. R.S. 14:64. He waived his right to a jury trial, was found guilty as charged, and sentenced to seven years at hard labor and ordered to pay $74 in court costs or serve an additional 30 days in jail.
Ray Siebenkittel testified that he was the victim of an armed robbery on February 25, 1983 at about 3:15 p.m. in the 700 block of Gov. Nicholls Street. He had briefly met the defendant in 1979 and they had no further contact until he received several calls in January — February, 1983 at his place of employment, the Marie Antoinette Hotel. The defendant discussed a large boat a friend had to sell because of financial trouble. Siebenkittel figured the boat was worth $20,000 or more and he was willing to pay $6,000 ($2,000 of which he had borrowed from his sister). After additional calls he agreed to meet the defendant at a grocery store about 6 to 8 blocks from the hotel to go look at the boat.
Siebenkittel met the defendant and the two men started walking toward the corner. According to Siebenkittel, the defendant stuck a small caliber gun in his ribs and told him to turn over the $6,000 cash which *506 he had in an envelope. The defendant took the money and ran off.
Siebenkittel drove to the police station and reported the crime. He identified the defendant in a photo lineup and was positive the defendant was the robber.
The defendant denied the robbery. He testified that the charge was brought by Siebenkittel in retaliation because Siebenk-ittel lost money in a drug deal in which both men were involved. The defendant said he, Jim Pace (defendant’s roommate at the time), Nicholas Felton and Henry Can-niglio, Jr. became involved in a shipment of marijuana from Texas. They never received the goods, their money was lost, and the defendant was blamed.
Siebenkittel filed a civil suit against the defendant in Jefferson Parish allegedly relating to the robbery. Although he claimed not to know Pace, Felton or Canniglio, those three men also filed suit against the defendant relative to an alleged shrimping venture and all four were represented by the same attorney. During the preliminary examination defense counsel alludes to the fact that both suits were filed the same day. Siebenkittel claimed he knew nothing of the other suit and had found his attorney in the yellow pages because the office was near his work.
In brief, defense counsel deferred to the defendant’s arguments assigned in the pro se brief: (1) insufficiency of the evidence; (2) ineffective assistance of counsel; (3) illegal sentence. Finding reversible error in the first assignment, we pretermit the other two.
INSUFFICIENCY OF THE EVIDENCE
At the time of the alleged offense La.R.S. 14:64 defined armed robbery as the theft of anything of value from the person of another or in the immediate control of another by use of force or intimidation while armed with a dangerous weapon.[1] Theft is defined as the taking of anything of value belonging to another without consent or by means of fraudulent conduct. An intent to deprive permanently is essential. La.R.S. 14:67.
Appellate review of criminal convictions is limited to questions of law. La. Const. Art. 5, § 5(C). Sufficiency of the evidence is a question of law although the determination of whether the evidence is sufficient to support the conviction necessarily involves a review of the record. State v. Camp, 446 So.2d 1207 (La.1984). An appellate court must determine if any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The victim, Ray Siebenkittel, testified that after he met the defendant, ostensibly regarding the possible purchase of a boat, the defendant pulled a gun and robbed him of $6,000. No physical evidence was produced. The allegedly stolen money was never recovered although the police were notified immediately. No gun was found and the defendant claimed he never owned one. The State’s entire case against the defendant was Siebenkittel’s rather bizarre story.
This case does not involve the credibility of witnesses who differ as to particular facts when evidence is introduced to prove a robbery occurred. The entire State’s case rests on the alleged victim’s self-serving testimony.
Siebenkittel met the defendant briefly on one occasion in 1979. There is no explanation as to how he knew where the defendant worked in 1983 or why he would be interested in buying a boat. Although Sie-benkittel claimed the defendant had to call several times to coax him into considering the purchase, he brought $6,000 in cash when he went to view the boat. He then testified that the defendant (whom he knew well enough to identify by name as well as by description) pulled a gun on a public *507 street in broad daylight in the crowded French Quarter.
At the preliminary hearing the victim stated the defendant “took off” and answered affirmatively when asked if he testified the robber “ran away.” Defense counsel then declared that a prior accident caused a leg injury which made it impossible for the defendant to run. At trial Sie-benkittel denied testifying that the defendant “ran away” at the preliminary hearing and said: “He disappeared around the corner.” Siebenkittel later testified the defendant mentioned something about a leg injury and had a limp at the time of the robbery.
Siebenkittel maintained that he did not know the other three men and had never been part of a drug venture with them and the defendant. Yet the introduction of the petitions in Siebenkittel’s and the other three men’s civil suits against the defendant filed by the same attorney (allegedly on the same day) casts serious doubt upon the victim’s credibility.
The defendant, in a far more plausible story, claimed the suits were a way for his partners to recoup their losses from the drug deal. The four men all believed the defendant was about to settle a personal injury suit for a large sum of money. The defendant claimed that prior to trial he told Jim Pace that he would tell the truth about the drug deal if he went to trial on a fabricated armed robbery charge. The defendant had a prior conviction for misdemeanor theft and filing false papers, but was very concerned about this felony charge. Pace threatened to file additional charges against him.
The State must prove the defendant’s guilt beyond a reasonable doubt. Probabilities or less are not sufficient to convict.
It is not sufficient you should believe his guilt only probable. In fact, no degree of probability merely will authorize a conviction; but the evidence must be of such a character and tendency as to produce a moral certainty of the prisoner’s guilt to the exclusion of reasonable doubt.
State v. Shapiro, 431 So.2d 372, 387 (La.1982), quoting from State v. Go1ld, 395 So.2d 647, 656 (La.1980) (which had used a more lengthy quote from a jury charge on reasonable doubt approved by the Supreme Court in State v. Jefferson, 43 La.Ann. 995, 10 So. 199, 200 (1891)).
Under these bizarre facts we cannot conclude that a rational trier of fact, when presented with only the incredible, contradictory, and totally unsubstantiated testimony of the victim, could have found the defendant guilty of armed robbery beyond a reasonable doubt.
The defendant’s conviction and sentence are reversed and he is ordered discharged.[2]
REVERSED.

. This crime occurred prior to the latest amendment to La.R.S. 14:64 in 1983 La, Acts No. 70, § 1.

. The double jeopardy clause bars retrial following appellate reversal for insufficiency of evidence. State v. Shapiro, supra.